## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>450 Fifth Street NW,<br>Washington, DC 20530;<br><br>*Plaintiff*,<br><br>v.<br><br>SINCLAIR BROADCAST GROUP, INC.<br>10706 Beaver Dam Road<br>Hunt Valley, Maryland 21030;<br><br>RAYCOM MEDIA, INC.<br>201 Monroe Street<br>Montgomery, AL 36104;<br><br>TRIBUNE MEDIA COMPANY<br>435 North Michigan Avenue<br>Chicago, IL 60611;<br><br>MEREDITH CORPORATION<br>1716 Locust Street<br>Des Moines, IA 50309;<br><br>GRIFFIN COMMUNICATIONS, LLC<br>7401 N. Kelley Avenue<br>Oklahoma City, OK 73111; and<br><br>DREAMCATCHER BROADCASTING, LLC<br>2016 Broadway<br>Santa Monica, CA 90404,<br><br>*Defendants*. | Case No. 1:18-cv-2609 |

# COMPLAINT

The United States of America, acting under the direction of the Acting Attorney General of the United States, brings this civil antitrust action to obtain equitable relief against Defendants Sinclair Broadcast Group, Inc. ("Sinclair"), Raycom Media, Inc. ("Raycom"), Tribune Media Company ("Tribune"), Meredith Corporation ("Meredith"), Griffin Communications, LLC ("Griffin"), and Dreamcatcher Broadcasting, LLC ("Dreamcatcher"), alleging as follows:

## I.  NATURE OF THE ACTION

1. This action challenges under Section 1 of the Sherman Act Defendants' agreements to unlawfully exchange competitively sensitive information among broadcast television stations.

2. Sinclair, Raycom, Tribune, Meredith, Griffin, and Dreamcatcher ("Defendants") and certain other television broadcast station groups ("Other Broadcasters") compete in various configurations in a number of designated marketing areas ("DMAs") in the market for broadcast television spot advertising.  Certain national sales representation firms ("Sales Rep Firms") represent broadcast station groups, including the Defendants, in their sales of spot advertising to advertisers.  Defendants', Other Broadcasters', and Sales Rep Firms' concerted behavior in exchanging competitively sensitive information has enabled the Defendants and Other Broadcasters to reduce competition in the sale of broadcast television spot advertising where they purport to compete head to head.

3. Defendants' agreements are restraints of trade that are unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Court should therefore enjoin Defendants from

exchanging competitively sensitive information with and among competing broadcast television stations.

## II.   JURISDICTION AND VENUE

4.   Each Defendant sells spot advertising to advertisers throughout the United States, or owns and operates broadcast television stations in multiple states or in DMAs that cross state lines.  Sales Rep Firms represent broadcast stations throughout the United States, including each of the Defendants, in the sale of spot advertising to advertisers throughout the United States.  Such activities, including the exchanges of competitively sensitive information featured in this Complaint, are in the flow of and substantially affect interstate commerce.  The Court has subject matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331 and 1337, to prevent and restrain the Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.   Defendants have consented to venue and personal jurisdiction in this District. Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391.

## III.   DEFENDANTS

6.   Defendant Sinclair is a Maryland corporation with its principal place of business in Hunt Valley, Maryland.  Sinclair owns or operates 130 television stations in 87 DMAs and had over $2.7 billion in revenues in 2017.

7.   Defendant Raycom is a Delaware corporation with its principal place of business in Montgomery, Alabama.  Raycom owns or operates 55 television stations in 43 DMAs and had over $670 million in revenues in 2017.

8. Defendant Tribune is a Delaware corporation with its principal place of business in Chicago, Illinois. Tribune owns or operates 41 television stations in 31 DMAs and had over $1.8 billion in revenues in 2017.

9. Defendant Meredith is an Iowa corporation with its principal place of business in Des Moines, Iowa. Meredith owns or operates 17 television stations in 12 DMAs and had over $1.7 billion in revenues in 2017.

10. Defendant Griffin is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma. Griffin owns or operates four television stations in two DMAs and had over $60 million in revenues in 2017.

11. Defendant Dreamcatcher is a Delaware corporation with its principal place of business in Santa Monica, California. Dreamcatcher owns or operates three television stations in two DMAs and had over $50 million in revenues in 2017.

### IV.   INDUSTRY BACKGROUND

12. Broadcast television is important to both viewers and advertisers. For viewers, broadcast stations, including local affiliates of ABC, CBS, FOX, and NBC (collectively, the "Big 4" stations), offer not only highly rated entertainment and sports programming, but also local reporting of the news and events in their own communities and regions. The wide popularity of broadcast station programming—and the concomitant opportunity to reach a large local audience—also make broadcast television critical to advertisers, including local businesses that seek to reach potential customers in their own communities.

13. Broadcast stations sell advertising "spots" during breaks in their programming. An advertiser purchases spots from a broadcast station to communicate its message to viewers within the DMA in which the broadcast television station is located.

14. Broadcast stations typically divide their sale of spot advertising into two categories: local sales and national sales. Local sales are sales a broadcast station makes through its own local sales staff, typically to advertisers located within the DMA. National sales are sales a broadcast station makes through either a Sales Rep Firm or through a centrally located broadcast group staff, typically to regional or national advertisers.

15. Sales Rep Firms represent broadcast stations in negotiations with advertisers' or advertisers' agents regarding the sale of broadcast stations' spot advertising. There are two primary Sales Rep Firms in the United States. Often a Sales Rep Firm represents two or more competing stations in the same DMA. In those cases, the Sales Rep Firms purportedly erect firewalls to prevent coordination and information sharing between sales teams representing competing stations.

## V.   THE UNLAWFUL AGREEMENTS

16. Defendants and Other Broadcasters have agreed in many DMAs across the United States to reciprocally exchange revenue pacing information. Certain Defendants also engaged in the exchange of other forms of competitively sensitive sales information in certain DMAs. Pacing compares a broadcast station's revenues booked for a certain time period to the revenues booked for the same point in time in the previous year. Pacing indicates how each station is performing versus the rest of the market and provides insight into each station's remaining spot advertising inventory for the period.

17. Defendants' exchange of competitively sensitive information has taken at least two forms.

18. First, Defendants and Other Broadcasters regularly exchanged pacing information through the Sales Rep Firms. At least once per quarter, but frequently more often, the Sales Rep Firms representing the Big 4 stations in a DMA exchanged real-time pacing information regarding each station's revenues, and reported the information to the Defendants and the other Big 4 station owners in the DMA. Typically, the exchanges included data on individual stations' booked sales for current and future months as well as a comparison to past periods. To the extent a Sales Rep Firm represents more than one Big 4 station in a DMA through sales teams separated by a supposed firewall, the exchange of pacing and other competitively sensitive information occurred between the sales teams and through those firewalls. Once given to the Defendants and Other Broadcasters in the DMA, the competitors' pacing information was then disseminated to the stations' sales managers and other individuals with authority over pricing and sales for the broadcast stations. These exchanges occurred with Defendants' knowledge and frequently at Defendants' instruction, and occurred in DMAs across the United States.

19. Second, in some DMAs, Defendants and Other Broadcasters exchanged competitively sensitive information, including real-time pacing information for booked sales for current and future months, directly between broadcast station employees. These exchanges predominantly concerned local sales, but sometimes pertained to all sales or national sales.

20. These exchanges of pacing information allowed stations to better understand, in real time, the availability of inventory on competitors' stations, which is often a key factor affecting negotiations with buyers over spot advertising prices. The exchanges also helped

stations to anticipate whether competitors were likely to raise, maintain, or lower spot advertising prices. Understanding competitors' pacing can help stations gauge competitors' and advertisers' negotiation strategies, inform their own pricing strategies, and help them resist more effectively advertisers' attempts to obtain lower prices by playing stations off of one another. Defendants' information exchanges therefore distorted the normal price-setting mechanism in the spot advertising market and harmed the competitive process.

21. Defendants' and Other Broadcasters' regular information exchanges, directly and through the Sales Rep Firms, reflect concerted action between horizontal competitors in the broadcast television spot advertising market.

## VI. VIOLATION ALLEGED

**(Violation of Section 1 of the Sherman Act)**

22. The United States repeats and realleges paragraphs 1 through 21 as if fully set forth herein.

23. Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to exchange competitively sensitive information, either directly or through Sales Rep Firms. Defendants' exchange of pacing information resulted in anticompetitive effects in the broadcast television spot advertising markets in many DMAs throughout the United States.

24. The scheme consists of exchanges between Defendants and Other Broadcasters, either directly or through the Sales Rep Firms, in many DMAs, of their stations' revenue pacing information or, for certain Defendants in certain DMAs, other competitively sensitive information concerning spot advertising sales.

25. These unlawful information sharing agreements between Defendants, Other Broadcasters, and Sales Rep Firms have had, and likely will continue to have, anticompetitive

effects in spot advertising markets by disrupting the normal mechanisms for negotiating and setting prices and harming the competitive process.

26. Defendants' agreements to exchange competitively sensitive information are unreasonable restraints of interstate trade and commerce. This offense is likely to continue and recur unless the requested relief is granted.

## VII.   REQUESTED RELIEF

27. The United States requests that the Court:

    a. adjudge that the information sharing agreements unreasonably restrain trade and are unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1;

    b. permanently enjoin and restrain Defendants from sharing pacing or other competitively sensitive information or agreeing to share such information with any other broadcast station or broadcast station group, directly or indirectly, and requiring Defendants to take such internal measures as are necessary to ensure compliance with that injunction;

    c. award the United States the costs of this action; and

    d. award such other relief to the United States as the Court may deem just and proper.


Dated: November 13, 2018

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA,

_____
MAKAN DELRAHIM (D.C. Bar #457795)
Assistant Attorney General for Antitrust

_____
WILLIAM J. RINNER
Acting Chief of Staff and Senior Counsel

_____
PATRICIA A. BRINK
Director of Civil Enforcement

_____
OWEN M. KENDLER
Chief, Media, Entertainment & Professional Services Section

_____
YVETTE TARLOV (D.C. Bar #442452)
Assistant Chief, Media, Entertainment & Professional Services Section

_____
LEE F. BERGER (D.C. Bar #482435)
RICHARD A. HELLINGS, JR.
GREGG MALAWER (D.C. Bar # 481685)
BENNETT J. MATELSON (D.C. Bar #454551)
MONSURA A. SIRAJEE

United States Department of Justice
Antitrust Division
Media, Entertainment & Professional Services Section
450 Fifth Street, N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 514-0230
Facsimile: (202) 514-7308