**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA
450 Fifth Street NW,
Washington, DC  20530;


*Plaintiff*,

      v.

SINCLAIR BROADCAST GROUP, INC.
10706 Beaver Dam Road
Hunt Valley, MD 21030;

RAYCOM MEDIA, INC.
201 Monroe Street
Montgomery, AL 36104;

TRIBUNE MEDIA COMPANY
435 North Michigan Avenue
Chicago, IL 60611;

MEREDITH CORPORATION
1716 Locust Street
Des Moines, IA 50309;

GRIFFIN COMMUNICATIONS, LLC
7401 N. Kelley Avenue
Oklahoma City, OK 73111;

DREAMCATCHER BROADCASTING,
LLC
2016 Broadway
Santa Monica, CA 90404;

NEXSTAR MEDIA GROUP, INC.
545 E. John Carpenter Freeway, Suite 700
Irving, TX 75062;

CBS CORPORATION
51 West 52nd Street
New York, NY 10019;

Case No. 1:18-cv-2609-TSC

COX ENTERPRISES, INC.
6205-A Peachtree Dunwoody Road
Atlanta, GA 30328;

THE E.W. SCRIPPS COMPANY
Scripps Center
312 Walnut Street, Suite 2800
Cincinnati, OH 45202;

FOX CORPORATION
1211 Avenue of the Americas
New York, NY 10036; and

TEGNA Inc.
8350 Broad Street, Suite 2000,
McLean, VA 22102


*Defendants*.


## SECOND AMENDED COMPLAINT

The United States of America, acting under the direction of the Attorney General of the

United States, brings this civil antitrust action to obtain equitable relief against Defendants

Sinclair Broadcast Group, Inc. ("Sinclair"), Raycom Media, Inc. ("Raycom"), Tribune Media

Company ("Tribune"), Meredith Corporation ("Meredith"), Griffin Communications, LLC

("Griffin"), Dreamcatcher Broadcasting, LLC ("Dreamcatcher"), Nexstar Media Group, Inc.

("Nexstar"), CBS Corporation ("CBS"), Cox Enterprises, Inc. ("Cox"), The E.W. Scripps

Company ("Scripps"), Fox Corporation ("Fox"), and TEGNA Inc. ("TEGNA") alleging as

follows:

## I.      NATURE OF THE ACTION

1.      This action challenges under Section 1 of the Sherman Act Defendants'

agreements to unlawfully exchange competitively sensitive information among broadcast

television stations.

2.      Sinclair, Raycom, Tribune, Meredith, Griffin, Dreamcatcher, Nexstar, CBS, Cox,

Scripps, Fox, and TEGNA ("Defendants") and certain other television broadcast station groups

("Other Broadcasters") compete in various configurations in a number of designated marketing

areas ("DMAs") in the market for broadcast television spot advertising.  Certain national sales

representation firms ("Sales Rep Firms"), including Cox subsidiary Cox Reps, Inc. ("Cox Reps")

represent broadcast station groups, including the Defendants, in their sales of spot advertising to

advertisers.  Defendants', Other Broadcasters', and Sales Rep Firms' concerted behavior in

exchanging competitively sensitive information has enabled the Defendants and Other

Broadcasters to reduce competition in the sale of broadcast television spot advertising where

they purport to compete head to head.

3.      Defendants' agreements are restraints of trade that are unlawful under Section 1

of the Sherman Act, 15 U.S.C. § 1.  The Court should therefore enjoin Defendants from

exchanging competitively sensitive information with and among competing broadcast television

stations.

## II.      JURISDICTION AND VENUE

4.      Each Defendant sells spot advertising to advertisers throughout the United States,

or owns and operates broadcast television stations in multiple states or in DMAs that cross state

lines.  Sales Rep Firms represent broadcast stations throughout the United States, including each

of the Defendants, in the sale of spot advertising to advertisers throughout the United States.

Such activities, including the exchanges of competitively sensitive information featured in this

Complaint, are in the flow of and substantially affect interstate commerce.  The Court has subject

matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C.

§§ 1331 and 1337, to prevent and restrain the Defendants from violating Section 1 of the

Sherman Act, 15 U.S.C. § 1.

5.       Defendants have consented to venue and personal jurisdiction in this District.

Venue is proper in this judicial district under Section 12 of the Clayton Act, 15 U.S.C. § 22, and

28 U.S.C. § 1391.

### III.    DEFENDANTS

6.       Defendant Sinclair is a Maryland corporation with its principal place of business

in Hunt Valley, Maryland.  Sinclair owns or operates 191 television stations in 89 DMAs and

had over $3.0 billion in revenues in 2018.

7.       Defendant Raycom was a Delaware corporation with its principal place of

business in Montgomery, Alabama.  Raycom owned or operated 55 television stations in 43

DMAs and had over $670 million in revenues in 2017.  On January 2, 2019, Gray Television,

Inc. closed on its acquisition of Raycom.

8.       Defendant Tribune is a Delaware corporation with its principal place of business

in Chicago, Illinois.  Tribune owns or operates 44 television stations in 33 DMAs and had over

$2.0 billion in revenues in 2018.

9.      Defendant Meredith is an Iowa corporation with its principal place of business in Des Moines, Iowa.  Meredith owns or operates 17 television stations in 12 DMAs and had over $2.2 billion in revenues in 2018.

10.     Defendant Griffin is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.  Griffin owns or operates four television stations in two DMAs and had over $74 million in revenues in 2018.

11.     Defendant Dreamcatcher is a Delaware limited liability company with its principal place of business in Santa Monica, California.  Dreamcatcher owns or operates three television stations in two DMAs and had over $50 million in revenues in 2017.

12.     Defendant Nexstar is a Delaware corporation with its principal place of business in Irving, Texas.  Nexstar owns or operates 171 television stations in 100 DMAs and had over $2.8 billion in revenues in 2018.

13.     Defendant CBS is a Delaware corporation with its principal place of business in New York, New York.  CBS owns or operates 28 television stations in 18 DMAs, and had over $14.5 billion in revenues in 2018.

14.     Defendant Cox is a Delaware corporation with its principal place of business in Atlanta, Georgia.  Cox owns or operates 14 television stations in 10 DMAs, owns Cox Reps, and had an estimated $20 billion in revenues in 2018.

15.     Defendant Scripps is an Ohio corporation with its principal place of business in Cincinnati, Ohio.  Scripps owns or operates 60 television stations in 42 DMAs, and had over $917 million in revenues in 2018.

16.     Defendant Fox is a Delaware corporation with its principal place of business in New York, New York.  Fox owns or operates 17 television stations in 17 DMAs.  Fox is a corporate entity recently created from certain former 21st Century Fox assets, including its broadcast station assets, after The Walt Disney Company acquired 21st Century Fox and spun-out Fox.  21st Century Fox's television segment earned over $5 billion in 2017.

17.     Defendant TEGNA is a Delaware corporation with its principal place of business in McLean, Virginia.  TEGNA owns or operates 49 television stations in 41 DMAs, and had $2.2 billion in revenues in 2018.

## IV.     INDUSTRY BACKGROUND

18.     Broadcast television is important to both viewers and advertisers.  For viewers, broadcast stations, including local affiliates of the networks ABC, CBS, FOX, and NBC (collectively, the "Big 4" stations), offer not only highly rated entertainment and sports programming, but also local reporting of the news and events in their own communities and regions.  The wide popularity of broadcast station programming—and the concomitant opportunity to reach a large local audience—also make broadcast television critical to advertisers, including local businesses that seek to reach potential customers in their own communities.

19.     Broadcast stations sell advertising "spots" during breaks in their programming.  An advertiser purchases spots from a broadcast station to communicate its message to viewers within the DMA in which the broadcast television station is located.

20.     Broadcast stations typically divide their sale of spot advertising into two categories:  local sales and national sales.  Local sales are sales a broadcast station makes

through its own local sales staff, typically to advertisers located within the DMA.  National sales

are sales a broadcast station makes through either a Sales Rep Firm or through a centrally located

broadcast group staff, typically to regional or national advertisers.

21.      Sales Rep Firms represent broadcast stations in negotiations with advertisers' or

advertisers' agents regarding the sale of broadcast stations' spot advertising.  There are two

primary Sales Rep Firms in the United States, including Cox Reps.  Often a Sales Rep Firm

represents two or more competing stations in the same DMA.  In those cases, the Sales Rep

Firms purportedly erect firewalls to prevent coordination and information sharing between sales

teams representing competing stations.

## V.      THE UNLAWFUL AGREEMENTS

22.      Defendants, Other Broadcasters, and Sales Rep Firms have agreed in many

DMAs across the United States to reciprocally exchange revenue pacing information.  Certain

Defendants also engaged in the exchange of other forms of competitively sensitive sales

information in certain DMAs.  Pacing compares a broadcast station's revenues booked for a

certain time period to the revenues booked for the same point in time in the previous year.

Pacing indicates how each station is performing versus the rest of the market and provides

insight into each station's remaining spot advertising inventory for the period.

23.      Defendants' exchange of competitively sensitive information has taken at least

two forms.

24.      First, Defendants and Other Broadcasters regularly exchanged pacing information

through the Sales Rep Firms, exchanges which the Sales Rep Firms agreed to facilitate or

knowingly facilitated.  At least once per quarter, but frequently more often, the Sales Rep Firms

representing the Big 4 stations in a DMA exchanged real-time pacing information regarding each

station's revenues, and reported the information to the Defendants and the other Big 4 station

owners in the DMA.  Typically, the exchanges included data on individual stations' booked sales

for current and future months as well as a comparison to past periods.  To the extent a Sales Rep

Firm represents more than one Big 4 station in a DMA through sales teams separated by a

supposed firewall, the exchange of pacing and other competitively sensitive information

occurred between the sales teams and through those firewalls.  Once given to the Defendants and

Other Broadcasters in the DMA, the competitors' pacing information was then disseminated to

the stations' sales managers and other individuals with authority over pricing and sales for the

broadcast stations.  These exchanges occurred with Defendants' knowledge and frequently at

Defendants' instruction, and occurred in DMAs across the United States.

26.     Second, in some DMAs, Defendants and Other Broadcasters exchanged

competitively sensitive information, including real-time pacing information for booked sales for

current and future months, directly between broadcast station employees.  These exchanges

predominantly concerned local sales, but sometimes pertained to all sales or national sales.

26.     These exchanges of pacing information allowed stations to better understand, in

real time, the availability of inventory on competitors' stations, which is often a key factor

affecting negotiations with buyers over spot advertising prices.  The exchanges also helped

stations to anticipate whether competitors were likely to raise, maintain, or lower spot

advertising prices.  Understanding competitors' pacing can help stations gauge competitors' and

advertisers' negotiation strategies, inform their own pricing strategies, and help them resist more

effectively advertisers' attempts to obtain lower prices by playing stations off of one another.

Defendants' information exchanges therefore distorted the normal price-setting mechanism in the spot advertising market and harmed the competitive process.

27.     Defendants' and Other Broadcasters' regular information exchanges, directly and through the Sales Rep Firms, reflect concerted action between horizontal competitors in the broadcast television spot advertising market.

## VI.     VIOLATION ALLEGED

## (Violation of Section 1 of the Sherman Act)

28.     The United States repeats and realleges paragraphs 1 through 26 as if fully set forth herein.

29.     Defendants violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to exchange competitively sensitive information, either directly or through Sales Rep Firms. Cox Reps also violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to or knowingly facilitating the exchange of competitively sensitive information among another Sales Rep Firm, certain Defendants, and Other Broadcasters.  Defendants' exchange of pacing information resulted in anticompetitive effects in the broadcast television spot advertising markets in many DMAs throughout the United States.

30.     The scheme consists of exchanges between Defendants and Other Broadcasters, either directly or through the Sales Rep Firms, in many DMAs, of their stations' revenue pacing information or, for certain Defendants in certain DMAs, other competitively sensitive information concerning spot advertising sales.

31.     These unlawful information sharing agreements between Defendants, Other Broadcasters, and Sales Rep Firms have had, and likely will continue to have, anticompetitive

effects in spot advertising markets by disrupting the normal mechanisms for negotiating and setting prices and harming the competitive process.

32.    Defendants' agreements to exchange competitively sensitive information are unreasonable restraints of interstate trade and commerce.  This offense is likely to continue and recur unless the requested relief is granted.

## VII.    REQUESTED RELIEF

33.    The United States requests that the Court:

a.    adjudge that the information sharing agreements unreasonably restrain trade and are unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1;

b.    permanently enjoin and restrain Defendants from sharing pacing or other competitively sensitive information or agreeing to share such information with any other broadcast station or broadcast station group, directly or indirectly, and requiring Defendants to take such internal measures as are necessary to ensure compliance with that injunction;

c.    permanently enjoin and restrain Cox, acting through Cox Reps, from sharing competitively sensitive information, agreeing to share competitively sensitive information, facilitating the sharing of pacing or other competitively sensitive information or agreeing to facilitate the sharing of such information among any broadcast stations or broadcast station groups, directly or indirectly, and requiring Cox to take such internal measures as are necessary to ensure compliance with that injunction;

d.    award the United States the costs of this action; and

   e.  award such other relief to the United States as the Court may deem

just and proper.

Dated: June 17, 2019


Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA,

_____
MAKAN DELRAHIM (D.C. Bar #457795)
Assistant Attorney General for Antitrust

_____
WILLIAM J. RINNER
Chief of Staff and Senior Counsel

_____
PATRICIA A. BRINK
Director of Civil Enforcement

_____
OWEN M. KENDLER
Chief, Media, Entertainment & Professional
Services Section

_____
YVETTE TARLOV (D.C. Bar #442452)
Assistant Chief, Media, Entertainment &
Professional Services Section

_____
LEE F. BERGER (D.C. Bar #482435)
MEAGAN K. BELLSHAW
GREGG MALAWER (D.C. Bar #481685)
BENNETT J. MATELSON (D.C. Bar
#454551)
KATE M. RIGGS (D.C Bar #984784)
ETHAN D. STEVENSON

United States Department of Justice
Antitrust Division
Media, Entertainment & Professional
Services Section
450 Fifth Street, N.W., Suite 4000
Washington, DC 20530
Telephone: (202) 514-0230
Facsimile: (202) 514-7308