# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA;

*Plaintiff*,

v.

SINCLAIR BROADCAST GROUP, INC.,
et al.

*Defendants*.

Case No: 18-cv-02609-TSC

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Second Amended Complaint on August 1st, 2019, alleging that Defendant CBS Corporation, among others, violated Section 1 of the Sherman Act, 15 U.S.C. § 1, the United States and Defendant, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, the United States and Defendant agree to be bound by the provisions of this Final Judgment pending its approval by this Court;

AND WHEREAS, the Defendant agrees to undertake certain actions and to refrain from engaging in certain forms of information sharing with its competitors;

5

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter and each of the parties to this action. The allegations in the Second Amended Complaint arise under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1. *See* 28 U.S.C. § 1331.

## II.    DEFINITIONS

As used in this Final Judgment:

A.    "Advertiser" means an advertiser, an advertiser's buying agent, or an advertiser's representative.

B.    "Agreement" means any agreement, understanding, pact, contract, or arrangement, formal or informal, oral or written, between two or more Persons.

C.    "Communicate," "Communicating," and "Communication(s)" means to provide, send, discuss, circulate, exchange, request, or solicit information, whether directly or indirectly, and regardless of the means by which it is accomplished, including orally or by written means of any kind, such as electronic communications, e-mails, facsimiles, telephone communications, voicemails, text messages, audio recordings, meetings, interviews, correspondence, exchange of written or recorded information, or face-to-face meetings.

D.    "Competitively Sensitive Information" means any of the following information, less than eighteen months old, of Defendant, or any broadcast television station regarding the sale of spot advertising on broadcast television stations: Non-Public Information relating to pricing or pricing strategies, pacing, holding capacity, revenues, or market shares. Reports containing only

aggregated market-level or national data are not Competitively Sensitive Information, but reports (including by paid subscription) that are customized or confidential to a particular Station or broadcast television station group are Competitively Sensitive Information. For the avoidance of doubt, spot advertising does not include network television advertising sold by the Defendant or television advertising sold by the Defendant in its capacity as an agent of the owners of syndicated programming.

E.      "Cooperative Agreement" means (1) joint sales agreements, joint operating agreements, local marketing agreements, news share agreements, or shared services agreements, or (2) any agreement through which a Person exercises control over any broadcast television station not owned by the Person.

F.      "CTS" means the CBS Television Stations group, its successors and assigns, and its officers and employees. CTS is an unincorporated division of CBS Corporation that consists of Defendant's 29 owned-and-operated broadcast television stations. CTS functions as an independent operating group within Defendant with its own officers and directors. To the extent any Defendant-owned broadcast television station comes under the control or operation of a division or subsidiary of Defendant other than the CBS Television Stations group, that other division or subsidiary is included in the definition of "CTS."

G.      "CTS Management" means all directors and officers of CTS, or any other Defendant employee with management or supervisory responsibilities for CTS's business or operations related to the sale of spot advertising on any Station.

H.      "Defendant" means CBS Corporation, a Delaware corporation with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, and Stations, and their directors, officers, and employees.

7

*I.*      "DMA" means Designated Market Area as defined by A.C. Nielsen Company and used by the *Investing in Television BIA Market Report 2018.*

J.      "Management" means all directors and executive officers of Defendant, or any other employee with management or supervisory responsibilities for Defendant's business or operations related to the sale of spot advertising on any Station.

K.      "Non-Public Information" means information that is not available from public sources or generally available to the public. Measurement or quantification of a Station's future holding capacity is Non-Public Information, but measurement or quantification of a Station's past holding capacity is not Non-Public Information. For the avoidance of doubt, the fact that information is available by paid subscription does not on its own render the information public.

L.      "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

M.      "Sales Representative Firm" means any organization, including without limitation Katz Media Group, Inc. and Cox Reps, Inc., and their respective subsidiaries and divisions, that represents a Station or its owner in the sale of spot advertising.

N.       "Sales Staff" means Defendant's employees with responsibility for the sale of spot advertising on any Station.

O.      "Station" means any broadcast television station, its successors and assigns, and its subsidiaries, divisions, groups, and its owner or operator and its directors, officers, managers, and employees, unless a Station owns, is owned by, or is under common ownership with a Sales Representative Firm, in which case that Sales Representative Firm will not be considered a Station.

### III.    APPLICABILITY

This Final Judgment applies to Defendant, other Persons in active concert or participation with Defendant who receive actual notice of this Final Judgment by personal service or otherwise, and any Person that signs an Acknowledgment of Applicability, attached as Exhibit 2, to the extent set forth therein, as a condition of the purchase of a Station owned by Defendant as of February 1, 2019. This Final Judgment applies to Defendant's actions performed under any Cooperative Agreement, even if those actions are taken on behalf of a third party. This Final Judgment is fully enforceable, including by penalty of contempt, against all of the foregoing.

### IV.    PROHIBITED CONDUCT

A.    Defendant's Management and Sales Staff shall not, directly or indirectly:

1.    Communicate Competitively Sensitive Information to any Station in the same DMA Defendant does not own or operate;

2.    Knowingly use Competitively Sensitive Information from or regarding any Station in the same DMA Defendant does not own or operate;

3.    Encourage or facilitate the Communication of Competitively Sensitive Information to or from any Station in the same DMA Defendant does not own or operate; or

4.    Attempt to enter into, enter into, maintain, or enforce any agreement to Communicate Competitively Sensitive Information with any Station in the same DMA Defendant does not own or operate.

B.    The prohibitions under Paragraph IV(A) apply to Defendant's Communicating or agreeing to Communicate through a Sales Representative Firm or a third-party agent at Defendant's instruction or request.

C.      Defendant shall not sell any Station owned by the Defendant as of February 1, 2019 to any Person unless that Person has first executed the Acknowledgment of Applicability, attached as Exhibit 2. Defendant shall submit any Acknowledgement of Applicability to the United States within 15 days of consummating the sale of such Station. The United States, in its sole discretion, may waive the prohibition in this Paragraph IV(C) on a Station-by-Station basis. Alternatively, the United States and the Person signing the Acknowledgement of Applicability may agree to void the Acknowledgement of Applicability at any time. The first sentence of this paragraph shall not apply to the sale of any Station to a Person already bound to a final judgment entered by a court regarding the Communication of Competitively Sensitive Information.

## V.      CONDUCT NOT PROHIBITED

A.      Nothing in Section IV shall prohibit Defendant from Communicating, using, or encouraging or facilitating the Communication of, Competitively Sensitive Information with an actual or prospective Advertiser, except that, if the Advertiser is another Station, Defendant's Communicating, using, or encouraging or facilitating the Communication of, Competitively Sensitive Information is excluded from the prohibitions of Section IV only insofar as is reasonably necessary to negotiate the sale of spot advertising on broadcast television stations. For the avoidance of doubt, Defendant is not prohibited from internally using Competitively Sensitive Information received from an Advertiser that is a Station under the preceding sentence, but Defendant is prohibited from Communicating that Competitively Sensitive Information to a Station in the same DMA that it does not own or operate.

B.      Nothing in Section IV shall prohibit Defendant from, after securing advice of counsel and in consultation with the Antitrust Compliance Officer, Communicating, using, encouraging or facilitating the Communication of, or attempting to enter into, entering into,

10

maintaining, or enforcing any agreement to Communicate Competitively Sensitive Information with any Station when such Communication or use is (a) for the purpose of evaluating or effectuating a bona fide acquisition, disposition, or exchange of Stations or related assets, or (b) reasonably necessary for achieving the efficiencies of any other legitimate competitor collaboration. With respect to any such agreement:

1.    For all agreements under Part V(B)(a) with any other Station to Communicate Competitively Sensitive Information that Defendant enters into, renews, or affirmatively extends after the date of entry of this Final Judgment, Defendant shall maintain documents sufficient to show:

    i.    the specific transaction or proposed transaction to which the sharing of Competitively Sensitive Information relates;

    ii.    the employees, identified with reasonable specificity, who are involved in the sharing of Competitively Sensitive Information; and

    iii.    the termination date or event of the sharing of Competitively Sensitive Information.

2.    All agreements under Part V(B)(b) with any other Station to Communicate Competitively Sensitive Information that Defendant enters into, renews, or affirmatively extends after the date of entry of this Final Judgment shall be in writing, and shall:

    i.    identify and describe, with specificity, the collaboration to which it is ancillary;

    ii.    be narrowly tailored to permit the Communication of Competitively Sensitive Information only when reasonably necessary and only to the employees reasonably necessary to effectuate the collaboration;

     iii.    identify with reasonable specificity the Competitively Sensitive Information Communicated pursuant to the agreement and identify the employees to receive the Competitively Sensitive Information;

     iv.    contain a specific termination date or event; and

     v.    be signed by all parties to the agreement, including any modifications to the agreement.

3.    For Communications under Part V(B)(a) above, Defendant shall maintain copies of all materials required under Paragraph V(B)(1) for five years or the duration of the Final Judgment, whichever is shorter, following entry into any agreement to Communicate or receive Competitively Sensitive Information, and Defendant shall make such documents available to the United States upon request, if such request is made during the preservation period.

4.    For Communications under Part V(B)(b) above, Defendant shall furnish a copy of all materials required under Paragraph V(B)(2) to the United States within thirty days of the entry, renewal, or extension of the agreement.

5.    For purposes of this Section V(B) only, a joint sales agreement, local marketing agreement, or similar agreement pursuant to which Defendant Communicates, uses, encourages or facilitates the Communication of, or attempts to enter into, enters into, maintains, or enforces any agreement to Communicate Competitively Sensitive Information related solely to the sale of spot advertising for which Defendant is responsible on a Station, shall be considered a "legitimate competitor collaboration" under Part V(B)(b).

C.      Nothing in Section IV shall prohibit Defendant from engaging in conduct in accordance with the doctrine established in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and their progeny.

D.      Nothing in Section IV prohibits Defendant from (1) Communicating, encouraging or facilitating the Communication of, or attempting to enter into, entering into, maintaining, or enforcing any agreement to Communicate Competitively Sensitive Information for the purpose of aggregation if (a) Competitively Sensitive Information is sent to or received from, and the aggregation is managed by, a third party not owned or operated by any Station; (b) the information disseminated by the aggregator is limited to historical total broadcast television station revenue or other geographic or characteristic categorization (e.g., national, local, or political sales revenue); and (c) any information disseminated is sufficiently aggregated such that it would not allow a recipient to identify, deduce, or estimate the prices or pacing of any individual broadcast television station not owned or operated by that recipient; or (2) using information that meets the requirements of Parts V(D)(1)(a)-(c).

## VI.      REQUIRED CONDUCT

A.      Within ten days of entry of this Final Judgment, Defendant shall appoint an Antitrust Compliance Officer who is an internal employee or officer of Defendant, and identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address. Within forty-five days of a vacancy in the Antitrust Compliance Officer position, Defendant shall appoint a replacement, and shall identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email

address. Defendant's initial or replacement appointment of an Antitrust Compliance Officer is subject to the approval of the United States, in its sole discretion.

    B.    The Antitrust Compliance Officer shall have, or shall retain outside counsel who has, the following minimum qualifications:

        1.    be an active member in good standing of the bar in any U.S. jurisdiction; and

        2.    have at least five years' experience in legal practice, including experience with antitrust matters, unless finding an Antitrust Compliance Officer or outside counsel meeting this experience requirement is a hardship on or is not reasonably available to Defendant, under which circumstances Defendant may select an Antitrust Compliance Officer or shall retain outside counsel who has at least five years' experience in legal practice, including experience with regulatory or compliance matters.

    C.    The Antitrust Compliance Officer shall, directly or through the employees or counsel working at the Antitrust Compliance Officer's responsibility and direction:

        1.    within fourteen days of entry of the Final Judgment, furnish to all of Defendant's Management and Sales Staff a copy of this Final Judgment, the Competitive Impact Statement filed by the United States with the Court, and a cover letter in a form attached as Exhibit 1;

        2.    within fourteen days of entry of the Final Judgment, in a manner to be devised by Defendant and approved by the United States, provide Defendant's Management and Sales Staff reasonable notice of the meaning and requirements of this Final Judgment;

3.   annually brief CTS Management and Sales Staff on the meaning and requirements of this Final Judgment and the U.S. antitrust laws;

4.   brief any Person who succeeds a Person in any position identified in Paragraph VI(C)(3), within sixty days of such succession;

5.   obtain from each Person designated in Paragraph VI(C)(3) or VI(C)(4), within thirty days of that Person's receipt of the Final Judgment, a certification that the Person (i) has read and understands and agrees to abide by the terms of this Final Judgment; (ii) is not aware of any violation of the Final Judgment that has not been reported to Defendant; and (iii) understands that failure to comply with this Final Judgment may result in an enforcement action for civil or criminal contempt of court;

6.   annually communicate to Defendant's Management and Sales Staff that they may disclose to the Antitrust Compliance Officer, without reprisal for such disclosure, information concerning any violation or potential violation of this Final Judgment or the U.S. antitrust laws by Defendant;

7.   within thirty days of the latest filing of the Second Amended Complaint, Proposed Final Judgment, or Competitive Impact Statement in this action, Defendant shall provide notice, in each DMA in which Defendant owns or operates a Station, to every full power Station in that DMA that sells broadcast television spot advertising that Defendant does not own or operate of the Second Amended Complaint, Proposed Final Judgment, and Competitive Impact Statement in a form and manner to be proposed by Defendant and approved by the United States in its sole

15

discretion. Defendant shall provide the United States with its proposal,
including the list of recipients, within ten days of the filing of the Second
Amended Complaint; and

8.   maintain for five years or until expiration of the Final Judgment,
whichever is shorter, a copy of all materials required to be issued under
Paragraph VI(C), and furnish them to the United States within ten days if
requested to do so, except documents protected under the attorney-client
privilege or the attorney work-product doctrine. For all materials required
to be furnished under Paragraph VI(C) which Defendant claims are
protected under the attorney-client privilege or the attorney work-product
doctrine, Defendant shall furnish to the United States a privilege log.

D.   Defendant shall:

1.   upon Management (including CTS Management) or the Antitrust
Compliance Officer learning of any violation or potential violation of any
of the terms and conditions contained in this Final Judgment, (i) promptly
take appropriate action to investigate, and in the event of a violation,
terminate or modify the activity so as to comply with this Final Judgment,
(ii) maintain all documents related to any violation or potential violation
of this Final Judgment for a period of five years or the duration of this
Final Judgment, whichever is shorter, and (iii) maintain, and furnish to the
United States at the United States' request, a log of (a) all such documents
and documents for which Defendant claims protection under the attorney-
client privilege or the attorney work product doctrine, and (b) all potential

16

and actual violations, even if no documentary evidence regarding the violations exist;

2.    within thirty days of Management or the Antitrust Compliance Officer learning of any such violation or potential violation of any of the terms and conditions contained in this Final Judgment, file with the United States a statement describing any violation or potential violation of any of the terms and conditions contained in this Final Judgment, which shall include a description of any Communications constituting the violation or potential violation, including the date and place of the Communication, the Persons involved, and the subject matter of the Communication;

3.    establish a whistleblower protection policy, which provides that any employee may disclose, without reprisal for such disclosure, to the Antitrust Compliance Officer information concerning any violation or potential violation by the Defendant of this Final Judgment or U.S. antitrust laws;

4.    have Defendant's CEO, President, or Executive Vice President, General Counsel certify in writing to the United States annually on the anniversary date of the entry of this Final Judgment that CTS has complied with the provisions of this Final Judgment;

5.    maintain and produce to the United States upon request: (i) a list identifying all employees having received the annual antitrust briefing required under Paragraphs VI(C)(3) and VI(C)(4); and (ii) copies of all materials distributed as part of the annual antitrust briefing required under

Paragraphs VI(C)(3) and VI(C)(4). For all materials requested to be produced under this Paragraph VI(D)(5) for which Defendant claims is protected under the attorney-client privilege or the attorney work-product doctrine, Defendant shall furnish to the United States a privilege log; and

E.      For the avoidance of doubt, the term "potential violation" as used in Paragraph VI(D) does not include the discussion of future conduct.

F.      If Defendant acquires a Station after entry of this Final Judgment, this Section VI will not apply to that acquired Station or the employees of that acquired Station until 120 days after closing of the acquisition of that acquired Station.

## VII.   DEFENDANT'S COOPERATION

A.      Defendant shall cooperate fully and truthfully with the United States in any investigation or litigation concerning whether or alleging that Defendant, any Station that Defendant does not own or operate, or any Sales Representative Firm Communicated Competitively Sensitive Information with or among Defendant or any other Station or any Sales Representative Firm in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1. Defendant shall use its best efforts to ensure that all current and former officers, directors, employees, and agents also fully and promptly cooperate with the United States, as described herein. The full, truthful, and continuing cooperation of Defendant shall include, but not be limited to:

1.      providing sworn testimony, that is not protected by the attorney-client privilege or the attorney work product doctrine, to the United States regarding the Communicating of Competitively Sensitive Information or any agreement with any other Station Defendant does not own or such

18

other Station's Sales Representative Firm to Communicate Competitively Sensitive Information while an employee of the Defendant;

2.    producing, upon request of the United States, all documents, data, and other materials, wherever located, to the extent not protected under the attorney-client privilege or the attorney work-product doctrine, in the possession, custody, or control of Defendant, that relate to the Communication of Competitively Sensitive Information or any agreement with any other Station or such other Station's Sales Representative Firm to Communicate Competitively Sensitive Information, and a log of documents protected by the attorney-client privilege or the attorney work product doctrine;

3.    making available for interview any officers, directors, and employees of Defendant if so requested on reasonable notice by the United States; and

4.    testifying at trial and other judicial proceedings fully, truthfully, and under oath, when called upon to do so by the United States;

5.    provided however, that the obligations of Defendant to cooperate fully with the United States as described in this Section VII shall cease upon the conclusion of all of the United States' investigations and the United States' litigations examining whether or alleging that Defendant, any Station that Defendant does not own or operate or such other Station's Sales Representative Firm Communicated Competitively Sensitive Information with or among Defendant or any other Station or any Sales Representative Firm in violation of Section 1 of the Sherman Act, as

19

amended, 15 U.S.C. § 1, including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in each such matter, at which point the United States will provide written notice to Defendant that its obligations under this Section VII have expired.

B.      Defendant is obligated to impose a litigation hold until the United States provides written notice to the Defendant that its obligations under this Section VII have expired. This Paragraph VII(B) does not apply to documents created after entry of this Final Judgment.

C.      Subject to the full, truthful, and continuing cooperation of Defendant, as defined in Paragraph VII(A), the United States will not bring any further civil action or any criminal charges against Defendant related to any Communication of Competitively Sensitive Information or any agreement to Communicate Competitively Sensitive Information with any other Station it does not own or operate or such other Station's Sales Representative Firm when that Communication or agreement:

1.      was Communicated, entered into and terminated on or before the date of the filing of the Second Amended Complaint in this action (or in the case of a Station that is acquired by Defendant after entry of this Final Judgment, was Communicated or entered into before the acquisition and terminated within 120 days after the closing of the acquisition); and

2.      does not constitute or include an agreement to fix prices or divide markets.

D.      The United States' agreement set forth in Paragraph VII(C) does not apply to any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), contempt (18 U.S.C. §§ 401-402), or obstruction of justice (18 U.S.C. § 1503, *et seq.*) by the Defendant or its officers, directors, and employees.

The United States' agreement set forth in Paragraph VII(C) does not release any claims against any Sales Representative Firm.

## VIII.   COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of any related orders, or of determining whether the Final Judgment should be modified, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendant, be permitted:

1.      to access during Defendant's office hours to inspect and copy, or at the option of the United States, to require Defendant to provide electronic or hard copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendant, relating to any matters that are the subject of this Final Judgment, not protected by the attorney-client privilege or the attorney work product doctrine; and

2.      to interview, either informally or on the record, Defendant's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant; and

3.      to obtain from Defendant written reports or responses to written interrogatories, of information not protected by the attorney-client

privilege or attorney work product doctrine, under oath if requested,

relating to any matters that are the subject of this Final Judgment as may

be requested.

B.      No information or documents obtained by the means provided in this Section VIII

shall be divulged by the United States to any Person other than an authorized representative of

the executive branch of the United States, except in the course of legal proceedings to which the

United States is a party (including grand jury proceedings), or for the purpose of securing

compliance with this Final Judgment, or for law enforcement purposes, or as otherwise required

by law.

C.      If at the time information or documents are furnished by Defendant to the United

States, Defendant represents and identifies in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the

Federal Rules of Civil Procedure, and Defendant marks each pertinent page of such material,

"Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil

Procedure," then the United States shall give Defendant ten calendar days' notice prior to

divulging such material in any legal proceeding (other than a grand jury proceeding).

## IX.      RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## X.      ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this

Final Judgment, including its right to seek an order of contempt from this Court. Defendant

agrees that in any civil contempt action, any motion to show cause, or any similar civil action

brought by the United States regarding an alleged violation of this Final Judgment, the United

States may establish a violation of the Final Judgment and the appropriateness of any remedy

therefor by a preponderance of the evidence, and Defendant waives any argument that a different

standard of proof should apply.

B.      The Final Judgment should be interpreted to give full effect to the procompetitive

purposes of the antitrust laws and to restore all competition the United States alleged was

harmed by the challenged conduct. Defendant agrees that it may be held in contempt of, and

that the Court may enforce, any provision of this Final Judgment that, as interpreted by the

Court in light of these procompetitive principles and applying ordinary tools of interpretation, is

stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its

face. In any such interpretation, the terms of this Final Judgment should not be construed

against either party as the drafter.

C.      In any enforcement proceeding in which the Court finds that Defendant has

violated this Final Judgment, the United States may apply to the Court for a one-time extension

of this Final Judgment, together with such other relief as may be appropriate. In connection with

any successful effort by the United States to enforce this Final Judgment against Defendant,

whether litigated or resolved prior to litigation, Defendant agrees to reimburse the United States

for the fees and expenses of its attorneys, as well as any other costs including experts' fees,

incurred in connection with that enforcement effort, including in the investigation of the potential violation.

## XI.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire seven years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendant that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XII.   NOTICE

For purposes of this Final Judgment, any notice or other communication required to be provided to the United States shall be sent to the person at the address set forth below (or such other addresses as the United States may specify in writing to Defendant):

> Chief
> Media, Entertainment, and Professional Services Section
> U.S. Department of Justice
> Antitrust Division
> 450 Fifth Street, NW, Suite 4000
> Washington, D.C. 20530

For purposes of this Final Judgment, any notice or other communication required to be provided to Defendant shall be sent to the person at the address set forth below (or such other addresses as Defendant may specify in writing to the United States):

> Andrew J. Siegel
> Senior Vice President, Law
> CBS Law Department
> CBS Television Stations
> 51 West 52nd Street
> New York, NY 10019

With a courtesy copy sent to:

Yehudah L. Buchweitz
Partner
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
*Counsel for Defendant*

## XIII.   PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

IT IS SO ORDERED by the Court, this third day of December, 2019.

Court approval subject to procedures
of Antitrust Procedures and Penalties
Act, 15 U.S.C. § 16

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

25

## EXHIBIT 1

[Company Letterhead]

Andrew J. Siegel
Senior Vice President, Law
CBS Law Department
**CBS Television Stations**
51 West 52nd Street
New York, NY 10019
T: 212-975-4480

     Re:    *Prohibitions Against Sharing of Competitively Sensitive Information*

Dear [XX]:

    I provide you this notice regarding a judgment recently entered by a federal judge in Washington, D.C. prohibiting the sharing of certain information with other broadcast television station(s).

    The judgment applies to our company and all of its employees, including you, so it is important that you understand the obligations it imposes on us. CEO or President of CBS Corp. has asked me to let each of you know that he expects you to take these obligations seriously and abide by them.

    The judgment prohibits us from sharing or receiving, directly or indirectly (including through a national sales representative firm), competitively sensitive information with or from any employee, agent, or representative of another broadcast television station in the same DMA it does not own or operate. Competitively sensitive information means any non-public information regarding the sale of spot advertising on broadcast television stations, including information relating to any pricing or pricing strategies, pacing, holding capacity, revenues, or market shares. There are limited exceptions to this restriction, which are listed in the judgment. We will provide briefing on the legitimate or illegitimate exchange of information. You must

consult with me if you have any questions on whether a particular circumstance is subject to an exception under the judgment.

A copy of the judgment is attached. Please read it carefully and familiarize yourself with its terms. The judgment, rather than the above description, is controlling. If you have any questions about the judgment or how it affects your sale of spot advertising, please contact me as soon as possible.

Please sign and return the attached Employee Certification to [Defendant's Antitrust Compliance Officer] within thirty days of your receipt of this letter. Thank you for your cooperation.

Sincerely,


Andrew J. Siegel
Senior Vice President, Law
CBS Law Department
**CBS Television Stations**

**<u>Employee Certification</u>**

I,_____[name],_____[position] at

_____ [station or location] do hereby certify that I (i) have read and understand, and

agree to abide by, the terms of the Final Judgment; (ii) am not aware of any violation of the Final

Judgment that has not been reported to CBS Corporation; and (iii) understand that my failure to

comply with this Final Judgment may result in an enforcement action for civil or criminal

contempt of court.

_____

Name:

Date:

**EXHIBIT 2**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA; | |
| *Plaintiff*, | |
| v. | Case No. |
| SINCLAIR BROADCAST GROUP, INC., et al. | |
| *Defendants*. | |

**ACKNOWLEDGEMENT OF APPLICABILITY**

The undersigned acknowledges that [*Full Buyer Name*], including its successors and assigns, and its subsidiaries, divisions, and broadcast television stations, and their directors, officers, and employees ("Acquirer"), following consummation of the Acquirer's acquisition of [*insert names of station or stations acquired*] (each, an "Acquired Station"), is bound by the Final Judgment entered by this Court in the above-captioned action ("Final Judgment"), as if the Acquirer were a Defendant under the Final Judgment, as follows:

1.  The Acquirer shall be bound in full by all Sections of the Consent Decree not specifically discussed below.

2.  As to Sections IV, V, and VII of the Final Judgment, the Acquirer is bound to the Final Judgment only as to (i) each Acquired Station, each Acquired Station's successors and assigns, and each Acquired Station's subsidiaries and divisions, and each Acquired Station's directors, officers, and employees, (ii) Acquirer's officers and directors only

29

with respect to any responsibilities or actions regarding any Acquired Stations, and (iii) employees with management or supervisory responsibilities for Acquirer's business or operations related to the sale of spot advertising on any Acquired Station, only with respect to those responsibilities.

3.  As to Section VI(C)(3), VI(C)(4), VI(C)(6), VI(C)(8), VI(D), VI(E), and VIII of the Final Judgment, the Acquirer is bound to the Final Judgment only as to (i) each Acquired Station, each Acquired Station's successors and assigns, and each Acquired Station's subsidiaries and divisions, and each Acquired Station's directors, officers, and employees, (ii) Acquirer's officers and directors, and (iii) employees with management or supervisory responsibilities for Acquirer's business or operations related to the sale of spot advertising on any Acquired Station.

4.  The release contained in Sections VII(C) and (D) applies to the Acquirer, but only to civil actions or criminal charges arising from actions taken by any Acquired Station.

5.  The Acquirer shall not be bound by Sections VI(C)(1), VI(C)(2), VI(C)(5), VI(C)(7), and VI(F) of the Final Judgment at all, unless the Acquirer acquires the Acquired Stations earlier than 45 days after entry of the Final Judgment.

6.  Section VI(A) applies to the Acquirer, but, unless the Acquirer acquires the Acquired Stations earlier than 45 days after entry of the Final Judgment, Section VI(A) is modified to make the initial period for appointing an Antitrust Compliance Officer in the first sentence 120 days from consummation of the Acquirer's acquisition of the Acquired Station or Acquired Stations.

This Acknowledgement of Applicability may be voided by a joint written agreement between the United States and the Acquirer.

Dated: [ ]

Respectfully submitted,


/s/_____
[Counsel for Acquirer]